# EXHIBIT "A"

HELTON LAW GROUP, APC
CARRIE McLAIN (State Bar No. 181674)
KIM WOROBEC (State Bar No. 220035)
SARA A. POPOVICH (State Bar No. 306700)
ATTORNEYS AT LAW
7711 Center Ave., Suite 350
Huntington Beach, CA 92647
TELEPHONE: (562) 901-4499
FACSIMILE: (562) 901-4488

ATTORNEYS FOR PLAINTIFF

FILED
2016 SEP 20 P 3: 47
CLERK OF THE SUPERIOR COURT
COUNTY OF STANISLAUS
BY____Trina Galvan____
                        DEPUTY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF STANISLAUS

DOCTORS MEDICAL CENTER OF MODESTO, INC.; a California corporation

Plaintiff,

vs.

GARDNER TRUCKING, INC., a California Corporation; and DOES 1 through 25, inclusive,

Defendants.

Case No: 2021796-
ASSIGNED TO:
DEPT.:

UNLIMITED – DAMAGES EXCEED $25,000

COMPLAINT FOR DAMAGES FOR:

1. BREACH OF IMPLIED-IN-FACT CONTRACT
2. QUANTUM MERUIT
3. OPEN BOOK ACCOUNT

TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

1. Defendants Gardner Trucking, Inc., and Does 1 through 25 (collectively, the "Defendants") have failed to pay more than $400,000.00 in medical reimbursement owed to Plaintiff Doctors Medical Center of Modesto, Inc. for medically necessary hospital care and services provided to six (6) Patients on twelve (12) dates of service.

### PARTIES

2. Plaintiff DOCTORS MEDICAL CENTER OF MODESTO, INC. ("the Hospital") is a California corporation, with its principal place of business in the county of Stanislaus, in the state of California. The Hospital is a California licensed acute-care hospital located in the city of Modesto.

3. The Hospital is informed and believes that Defendant GARDNER TRUCKING, INC. (hereinafter "Gardner Trucking") is a California corporation organized and existing under the laws of

---
1
COMPLAINT FOR DAMAGES

This case has been assigned to Judge TIMOTHY W. SALTER
Department 22, for all purposes including Trial.

FILED BY FAX

the state of California with its principal place of business in the city of Chino, county of San Bernardino, in the state of California. Plaintiffs are informed and believe that Defendant Gardner Trucking operates a self-funded benefit plan and provides health care benefits for its plan enrollees.

4. The Hospital is unaware of the true names, identities, and capacities of defendants sued herein as Does 1 through 25, inclusive, and each of them as based thereon, sues said defendants by such fictitious names. When their true names and capacities are ascertained, Plaintiff will amend this complaint by inserting their true names and capacities herein. The Hospital is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences alleged herein, and that the Hospital's damages as alleged herein were proximately caused by those defendants.

5. The Hospital is informed and believes and thereon alleges that at all times mentioned herein, each of the defendants, including all defendants sued under fictitious names, were the agent and/or employee of each of the remaining defendants, and in so doing the things alleged herein, were acting within the scope of his or her agency and employment.

6. The Hospital is withholding the full name of the Patients in this Complaint to preserve the Patients' protected rights to privacy concerning health care information. The Patients will be referred to as Patient 1, Patient 2, Patient 3, Patient 4, Patient 5 and Patient 6 (collectively, "the Patients").Their medical and claims information has been and will be made available to Defendants upon request.

7. At all times relevant, the Hospital was informed that each of the Patients at issue was a Gardner Trucking health plan enrollee.

8. Jurisdiction is proper in this judicial district because this is where the contracts at issue were entered into and/or where the breach occurred.

## GENERAL ALLEGATIONS

9. The Hospital is informed and believes that Defendants previously were parties to a written contract with a provider network that provided Defendants contractual discounts off the Hospital's charges, but Defendants chose to terminate such written contract.

10. The Hospital is informed and believes that Defendants are aware that, in the absence of a written contract, Defendants and its plan enrollees are not entitled to any contractual discount off the Hospital's charges and the Hospital is entitled to the reasonable value of its services, which is the Hospital's billed charges.

11. The Hospital is informed and believes that Defendants are aware of what the Hospital's charges are.

12. The Hospital is informed and believes that Defendants are aware that their plan enrollees regularly seek services from the Hospital.

13. The Hospital is informed and believes that Defendants still continue to authorize or otherwise permit its plan enrollees to receive services from the Hospital.

14. The Hospital is informed and believes and on that basis alleges Defendants further are aware that, given that no written contract exists between the Hospital and Defendants, the Hospital is permitted to balance bill the Patients for any amounts not covered by Defendants. Yet, Defendants issued explanations of benefits to the Hospital and the Patients that fail to make the balance of charges patient responsibility. In so doing, Defendants have interfered with the Hospital's ability to obtain payment from the Patients.

## SPECIFIC ALLEGATIONS AS TO PATIENT 1

15. Between November 2014 and May 2015, the Hospital provided medically necessary health care services on five occasions to Patient 1, a 54-year-old man.

16. Prior to Patient 1's arrival at the Hospital for the first instance of care, an outpatient echocardiogram, the Hospital contacted Defendants to request authorization. Defendants informed the Hospital that authorization was not required.

17. Prior to Patient 1's arrival at the Hospital for the second instance of care, the Hospital called Defendants and obtained authorization number 645535 for the planned outpatient cardiac stress testing.

18. Patient 1 next presented to the Hospital for an outpatient cardioversion for treatment of atrial fibrillation. Prior to her treatment, the Hospital contacted the Defendants, and Defendants provided authorization number 649283 for Patient 1's treatment.

19. Patient 1's fourth instance of care was for the inpatient treatment of atrial fibrillation and atrial cardioversion. The Hospital contacted Defendants prior to rendering these services, and Defendants provided authorization number 650774.

20. Finally, Patient 1 presented to the Hospital for an outpatient CT scan of the chest or heart with contrast. Prior to these planned services, the Hospital contacted Defendants and Defendants provided authorization number 654959.

21. The Hospital submitted to Defendants claims for reimbursement for the services the Hospital provided to Patient 1. Defendants acknowledged their obligation to pay the Hospital for medical services provided to Patient 1 through correspondence and discussions, including but not limited to issuing partial payments for the services rendered.

22. The Hospital's expected payment from the Defendants is the reasonable value of the Hospital's services, which is 100% of billed charges. The Hospital's expected reimbursement and Defendants' payments, and amounts Defendants identified as patient responsibility on each claim for Patient 1 are as follows:

| Claim No. | Hospital's Expected Reimbursement | Defendants' Payments | Amounts Identified by Defendants as Patient Responsibility |
|---|---|---|---|
| 1. | $6,783.93 | $- | $643.07 (Defendants paid $287.06 toward patient responsibility) |
| 2. | $15,866.78 | $1,500.00 | $- |
| 3. | $31,009.14 | $1,562.16 | $- |
| 4. | $42,424.29 | $9,019.69 | $- |
| 5. | $11,324.77 | $463.56 | $- |
| TOTALS: | $107,408.91 | $12,545.41 | $643.07 |

23. Defendants failed to fully reimburse the Hospital for the medically necessary services provided to Patient 1.

24. Taking into account Defendants' partial payments and the small amounts Defendants identified as patient responsibility, Defendants currently owe the Hospital $94,220.43 for the medically necessary services provided to Patient 1.

### SPECIFIC ALLEGATIONS AS TO PATIENT 2

25. In 2014, the Hospital provided medically necessary services to Patient 2, a 49-year-old woman, on two occasions. Specifically, Patient 2 was admitted for a vaginal hysterectomy, and later underwent outpatient laboratory testing.

26. Shortly before Patient 2's arrival at the Hospital for an inpatient vaginal hysterectomy services, the Hospital contacted Defendants to request authorization for the surgery. Defendants provided the Hospital with authorization number P14010212556.

27. Following discharge from the Hospital, Patient 2 required follow-up outpatient laboratory testing related to the previous surgery, which Defendants authorized. Prior to the Hospital's provision of such outpatient services, the Hospital contacted Defendants and Defendants informed the Hospital that authorization was not required for outpatient laboratory testing.

28. The Hospital submitted to Defendants claims for reimbursement for the services the Hospital provided to Patient 2. Defendants acknowledged their obligation to pay the Hospital for medical services provided to Patient 2 through correspondence and discussions, including but not limited to issuing partial payments for the services rendered.

29. The Hospital's expected reimbursement from the Defendants is the reasonable value of the Hospital's services, which is $174,043.08.

30. Defendants failed to fully reimburse the Hospital.

31. Taking into account Defendants' partial payments of $16,479.36 and the amount of $2,644.52 Defendants identified as patient responsibility, Defendants currently owe the Hospital $154,919.20 for the medically necessary services provided to Patient 2.

### SPECIFIC ALLEGATIONS AS TO PATIENT 3

32. Patient 3 was a 57-year-old man who suffered from calculus of the bile duct and planned to undergo outpatient surgery at the Hospital.

33. Three days before the endoscopic removal of a biliary tract stone was scheduled to be performed, the Hospital contacted Defendants to request authorization. Defendants authorized the Hospital to provide services to Patient 3 under authorization number P14040428914.

34. In reliance on this authorization, the Hospital proceeded with the planned surgery.

35. The Hospital submitted to Defendants a claim for reimbursement for the services the Hospital provided to Patient 3. Defendants acknowledged their obligation to pay the Hospital for medical services provided to Patient 3 through correspondence and discussions, including but not limited to issuing partial payments for the services rendered.

36. The Hospital's expected reimbursement from the Defendants is the reasonable value of the Hospital's services, which is $42,717.36.

37. Defendants failed to fully reimburse the Hospital.

38. Taking into account Defendants' partial payments of $3,306.90 and the amount of $1,542.38 Defendants identified as patient responsibility, Defendants currently owe the Hospital $37,868.18 for the medically necessary services provided to Patient 3.

### SPECIFIC ALLEGATIONS AS TO PATIENT 4

39. Patient 4 was a 34-year-old woman who was admitted to the Hospital for a post-term pregnancy delivery with precipitate labor, and an antepartum first-degree perineal laceration.

40. During her inpatient stay, the Hospital contacted Defendants to request authorization. Defendants responded to the Hospital's request by stating that no authorization was required, and further representing that Defendants cover 100% of the services after the patient's deductible was met.

41. The Hospital submitted to Defendants a claim for reimbursement for the services the Hospital provided to Patient 4. Defendants acknowledged their obligation to pay the Hospital for medical services provided to Patient 4 through correspondence and discussions, including but not limited to issuing partial payments for the services rendered.

42. The Hospital's expected reimbursement from the Defendants is the reasonable value of the Hospital's services, which is $35,420.43.

43. Defendants failed to fully reimburse the Hospital.

44. Taking into account Defendants' partial payments of $9,172.61, Defendants currently owe the Hospital $26,247.82 for the medically necessary services provided to Patient 4.

### SPECIFIC ALLEGATIONS AS TO PATIENT 5

45. Patient 5, a 45-year-old woman with a family history of malignant neoplasms of digestive organs, presented to the Hospital for an outpatient colonoscopy.

46. Three days prior to the colonoscopy, the Hospital contacted Defendants to request authorization. Defendants authorized the Hospital to provide services to Patient 5 under authorization number 660693.

47. In reliance on this authorization, the Hospital proceeded with the colonoscopy.

48. The Hospital submitted to Defendants a claim for reimbursement for the services the Hospital provided to Patient 5. Defendants acknowledged their obligation to pay the Hospital for medical services provided to Patient 5 through correspondence and discussions, including but not limited to issuing partial payments for the services rendered.

49. The Hospital's expected reimbursement from the Defendants is the reasonable value of the Hospital's services, which is $13,880.97.

50. Defendants failed to fully reimburse the Hospital.

51. Taking into account Defendants' partial payments of $1,997.76, and the amount of $6.32 Defendants identified as patient responsibility, Defendants currently owe the Hospital $11,876.89 for the medically necessary services provided to Patient 5.

### SPECIFIC ALLEGATIONS AS TO PATIENT 6

52. Patient 6, a 55-year-old woman, twice presented to the Hospital for treatment in 2015, for heart palpitations and cardiac dysrhythmia.

53. Patient 6 first presented to the Hospital for an outpatient echocardiogram.

54. Two days prior to the scheduled echocardiogram, the Hospital contacted Defendants to request authorization. Defendants responded to the Hospital's request by stating that no authorization was required.

55. Patient 6 next presented to the Hospital for a comprehensive electrophysiological evaluation.

56. Six days prior to the planned services, the Hospital contacted Defendants to request authorization. Defendants authorized the Hospital to provide services to Patient 6 under authorization number 650210.

57. The Hospital submitted to Defendants a claim for reimbursement for the services the Hospital provided to Patient 6. Defendants acknowledged their obligation to pay the Hospital for medical services provided to Patient 6 through correspondence and discussions, including but not limited to issuing partial payments for the services rendered.

58. The Hospital's expected reimbursement from the Defendants is the reasonable value of the Hospital's services, which is $97,109.91.

59. Defendants failed to fully reimburse the Hospital.

60. Taking into account Defendants' partial payments of $20,398.19, and the amount of $1,312.85 Defendants identified as patient responsibility, Defendants currently owe the Hospital $75,398.87 for the medically necessary services provided to Patient 6.

## FIRST CAUSE OF ACTION
## BREACH OF IMPLIED-IN-FACT CONTRACT
## (AS TO ALL DEFENDANTS)

61. The Hospital hereby re-alleges and incorporates by reference each and every allegation set forth in preceding paragraphs above, and further alleges as follows.

62. Prior to and/or at the time of providing such services, the Hospital contacted Defendants to request authorization for the services the Hospital provided to each of the Patients. Defendants responded by either authorizing such services or stating that no authorization was required.

63. Defendants did not assert that the Patients were not their insured, or indicate in any way to the Hospital they would not cover the Patients medical expenses.

64. The Hospital reasonably understood the actions and communications by Defendants to constitute express and/or implied requests that the Hospital provide services to the Patients and an agreement by Defendants to pay the Hospital for such requested services.

65. Defendants' conduct gave rise to implied-in-fact agreements between the Hospital and Defendants obligating Defendants to pay for the care and treatment rendered by the Hospital to the Patients.

66. The Hospital performed all its obligations under its implied-in-fact contracts with Defendants in that it cared for and treated the Patients to the best of the Hospital's ability.

67. The Hospital timely submitted to Defendants, claims for reimbursement for the services provided to Patient 1, Patient 2, Patient 3, Patient 4, Patient 5, and Patient 6.

68. Defendants acknowledged their contractual obligations to the Hospital by issuing partial payment on such claims. However, Defendants failed to fully reimburse the Hospital for the services rendered to the Patients.

69. Defendants thus breached their implied-in-fact agreements with the Hospital.

70. As a result, the Hospital has been damaged in an amount not less than $400,531.39.

## SECOND CAUSE OF ACTION

## QUANTUM MERUIT

## (AS TO ALL DEFENDANTS)

71. The Hospital hereby re-alleges and incorporates by reference each and every allegation set forth in preceding paragraphs above, and further alleges as follows.

72. As alleged above, the Hospital believes it is entitled to full and complete payment from the Defendants in accordance with the implied-in-fact contracts as set forth above. However, to the extent the implied-in-fact contracts alleged do not apply and/or are deemed unenforceable against the Defendants for any of the services at issue, the Hospital alleges in the alternative that the Defendants owe the Hospital for these services based on quantum meruit.

73. The Hospital is informed and believes that it notified the Defendants that the Patients were receiving medically necessary and physician-ordered hospital services.

74. For the dates of service, the Defendants verified the Patients' eligibility and benefits, and either authorized the Hospital's provision of services to each Patient or communicated to Hospital that Defendants would cover (i.e., pay for) the services without requiring authorization.

75. By verifying the Patients' benefits and either authorizing the services or communicating that the Defendants would cover and pay for the services without requiring authorization, Defendants expressly and/or impliedly requested the Hospital to provide hospital services to the Patients.

76. In response, the Hospital provided hospital services to the Patients.

77. Defendants have not reimbursed the Hospital the reasonable value of the hospital services it provided to the Patients. Thus, the Hospital has not been compensated for the significant health care services it provided to the Patients.

78. The Hospital is entitled to *quantum meruit* damages in an amount exceeding $400,531.39, to be proven at trial.

## THIRD CAUSE OF ACTION
## OPEN BOOK ACCOUNT
## (AGAINST ALL DEFENDANTS)

79. The Hospital re-alleges and incorporates by reference each and every allegation set forth in preceding paragraphs above.

80. As alleged above, the Hospital believes it is entitled to full and complete payment from the Defendants in accordance with the implied-in-fact contracts as set forth above. However, to the extent the implied-in-fact contract alleged does not apply and/or are deemed unenforceable against the Defendants for any of the services at issue, the Hospital alleges in the alternative that the Defendants owe the Hospital for these services based upon open book account.

81. The Hospital seeks recovery from the Defendants in an amount to be proved at trial, but in no event less than $400,531.39, based on an account stated in writing, plus interest.

82. In the ordinary course of business, the Hospital sent invoices for the services at issue to the place that the Defendants directed the Hospital to send those bills. The bills are commonly referred to as UB-04s, based on the form originated by the Medicare program, and now used routinely by all providers and payors, for stating bills. The amounts stated on these bills by the Hospital are the billed charges and therefore full values for the care provided to the Patients.

83. The Hospital further maintained the Defendants' open account for the services provided to the Patients. The open book account showed the account receivable – all debits and credits – for all of the services provided.

84. The Hospital is informed and believes that the Defendants agreed with the Hospital on the amount due from it, as reflected in the UB-04s sent to Defendants.

85. The Hospital is informed and believes that the Defendants expressly and/or impliedly promised to pay the amount due of $470,580.76. The Defendants only paid the Hospital or identified as patient responsibility a total of $70,049.37 and now owe the Hospital a balance of $400,531.39 for the open book account.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment as follows:

1. For compensatory damages in an amount according to proof at trial;
2. For the reasonable value of the services in quantum meruit;
3. For interest pursuant to Cal. Civil Code § 3287;
4. For costs and reasonable attorneys' fees to the extent allowed by law; and
5. For such other and further relief as the Court deems just and proper.

DATED: September 20, 2016

HELTON LAW GROUP, APC

By: _____
CARRIE McLAIN
KIM WOROBEC
SARA A. POPOVICH
Attorneys for Plaintiff
DOCTORS MEDICAL CENTER OF MODESTO, INC.

11
COMPLAINT FOR DAMAGES